UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NADA ADEL SHEHATA,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>PHH MORTGAGE CORPORATION,<br><br>　　　　　　　　　　Defendant. | Case No.:　3:25-cv-02085-JES-MSB<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFF'S MOTION TO REMAND TO STATE COURT; and**<br><br>**(2) DENYING TEMPORARY RESTRAINING ORDER** |

Pending before the Court are two motions filed by Plaintiff Nada Shehata ("Plaintiff"), proceeding *pro se*: a Motion to Remand the matter back to state court and an Emergency Motion for Temporary Restraining Order ("TRO"). ECF Nos. 5, 8. Plaintiff brings the instant action against PHH Mortgage Corporation ("Defendant" or "PHH") for claims related to its foreclosure on her home. The motions are fully briefed. After due consideration and for the reasons discussed below, the Court **DENIES** Plaintiff's motions.

//

//

//

# I. BACKGROUND

## A. Factual Background

Plaintiff's claims against PHH arise from its impending foreclosure on her home. ECF No. 1 ("NOR"). In 2006, Plaintiff executed a Deed of Trust using her property at 10483 Garden Walk Court, San Diego, as security for a loan of $511,992. ECF No. 12-1 ¶ 3. On two occasions, in 2017 and 2020, Plaintiff and Defendant entered into loan modification agreements. ECF No. 12-1 ¶¶ 4-5. Plaintiff subsequently defaulted on the modified loan and is currently delinquent for her monthly payment due on April 1, 2023. ECF No. 12 at 1. On October 30, 2024, PHH recorded a Notice of Default and election to sell Plaintiff's home under deed of trust. ECF No. 12-6.

On July 3, 2025, Plaintiff submitted a Mortgage Assistance Application ("MAA") to PHH, seeking a "Helping Homeowners" loan modification. ECF No. 18-2 at 2. On July 7, 2025, Plaintiff received a letter from PHH confirming receipt of the MAA and supporting documentation, stating that it may order a property valuation and would provide the plaintiff with a free copy of the report. ECF No. 18-2 at 4.

On July 8, 2025, Defendant continued foreclosure proceedings by recording a Notice of Trustee's Sale ECF No. 18-2 at 6. On July 12, 2025, Plaintiff followed up by email about her Helping Homeowner loan modification application. ECF No. 18-2 at 25. PHH apologized and stated that it had forwarded the application internally for review. *Id.* On July 15, 2025, PHH sent Plaintiff the same confirmation of receipt she had received on July 3, 2025, regarding her application. ECF No. 18-2 at 27, 44.

On August 11, 2025, Defendant denied Plaintiff's application for a Helping Homeowners loan modification, explaining that her loan was ineligible for the program because she was more than 90 days delinquent on payment. ECF No. 12-8.

## B. The Pending Motions

Plaintiff filed her initial complaint in this matter in San Diego Superior Court on July 22, 2025. NOR ¶ 1. On August 13, 2025, PHH removed the case to federal court, arguing both diversity jurisdiction and federal question jurisdiction grounds for removal.

*See generally* NOR. On August 15, 2025, Plaintiff moved to remand the case, arguing that neither ground for removal existed and that the equities favored the state court hearing the case. ECF No. 5. On September 4, 2025, Defendant filed an opposition to the motion to remand. ECF No. 11. On September 11, 2025, Plaintiff filed a reply brief. ECF No. 18.

While the case was before the state court, Plaintiff applied for a TRO to halt the trustee's sale of her home. ECF No. 8. On September 4, 2025, Defendant filed its opposition to plaintiff's TRO application. ECF No. 12. On September 11, 2025, Plaintiff filed a reply brief. ECF No. 18. On September 16, 2025, Defendant filed a sur-reply. ECF No. 20. In its sur-reply, Defendant stated that it would voluntarily postpone the September 22, 2025, foreclosure sale of the property for 60 days to give Plaintiff time to refinance the loan or sell the property to pay off the loan. *Id.* at 2.

## II.  LEGAL STANDARD

### A. Motion to Remand

Federal courts are courts of limited jurisdiction. *Gunn v. Minton*, 568 U.S. 251, 256 (2013). In a case originally brought in state court, a defendant may remove the action to federal court if there is federal subject matter jurisdiction. 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."). "Consistent with the limited jurisdiction of federal courts, the removal statute is strictly construed against removal jurisdiction." *Audo v. Ford Motor Co.*, 2018 WL 3323244, at *1 (S.D. Cal. July, 2018) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)). Therefore, the "burden of establishing that removal is proper" always lies with the defendant. *Gaus*, 980 F.2d at 566. If there is any doubt as to the propriety of removal, the court shall reject federal subject matter jurisdiction. *Id.*; *see also Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1057 (9th Cir. 2018) ("If a district court determines at any time that less than a preponderance of the evidence supports the right of removal, it must remand the action to the state court.").

    Federal subject matter jurisdiction may arise based on federal question or diversity jurisdiction. 28 U.S.C. § 1331, 1332(a). In the notice of removal, Defendant states that this court has federal subject matter jurisdiction over the matter based on diversity jurisdiction. NOR ¶ 11. The statute requires complete diversity between plaintiffs and defendants. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009). An individual is deemed to be a citizen of the state in which he or she is domiciled. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). A limited liability corporation is "a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). Further, to satisfy § 1332, the matter in controversy must exceed the sum or value of $75,000, exclusive of interests and costs. 28 U.S.C. § 1332(a).

    Under 28 U.S.C. § 1446, a defendant removing a civil action from state to federal district court must include "a short and plain statement of the grounds for removal," including as to the amount in controversy being met. 28 U.S.C. § 1446(a). Where a plaintiff challenges the defendant's allegation of jurisdiction under § 1332(a), § 1446 provides that "removal of the action is proper on the basis of an amount in controversy asserted [in the notice of removal] if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)." 28 U.S.C. §1446(c)(2)(B); *see Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014). In *Dart*, the Supreme Court recognized that this provision was added to § 1446 as part of the Federal Courts Jurisdiction and Venue Clarification Act of 2011 to "clarify[] the procedure in order when a defendant's assertion of the amount in controversy is challenged. In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* Even though *Dart* arose under the Class Action Fairness Act ("CAFA"), other courts within this district have applied this framework to non-CAFA cases. *See De Villing v. Sabert Corp.*, No. EDCV 18-2201 JGB (KKx), 2018 WL 6570868, at *2 (C.D. Cal. Dec. 11, 2018) (noting that *Dart* interpreted 28 U.S.C.§ 1446 which applies equally

1  to CAFA and general diversity jurisdiction cases and collecting cases applying *Dart* to
2  non-CAFA cases).

3  Thus, the evidence that the Court may consider here includes "evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (citing *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). Removal jurisdiction therefore cannot rely on "mere speculation and conjecture, with unreasonable assumptions." *Id.*

### B. Temporary Restraining Order

The legal standard for issuing a TRO is essentially identical to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

Generally, a plaintiff seeking a preliminary injunction must show: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in favor of the plaintiff; and (4) an injunction is in the public interest. *Id.* at 20. "A 'plaintiff [must] make a showing on *all four prongs*' to obtain a preliminary injunction." *A Woman's Friend Pregnancy Res. Clinic v. Becerra*, 901 F.3d 1166, 1167 (9th Cir. 2018) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

The Ninth Circuit also has a "serious questions" test, "a 'sliding scale' variant of the *Winter* test." *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1190 (9th Cir. 2024) (quoting *Alliance for the Wild Rockies*, 865 F.3d 1211, 1217 (9th Cir. 2017)). The serious questions test dictates that a plaintiff may still prevail in obtaining a TRO even if they can only show that there are "'serious questions going to the merits' – a lesser showing than likelihood of success on the merits – […] if the 'balance of hardships tips sharply in the plaintiff's favor.'" *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d

1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies*, 632 F.3d at 1135). Thus, under the serious questions test, a preliminary injunction can be granted if there are (1) serious questions going to the merits, (2) a likelihood of irreparable injury to the plaintiff, (3) a balance of hardships that tips sharply towards the plaintiff, and (4) the injunction is in the public interest. *Flathead-Lolo-Bitterroot Citizen Task Force*, 98 F.4th at 1190 (quoting *Alliance for the Wild Rockies*, 632 F.3d at 1135). The party moving for the TRO has the burden of persuasion. *Hill v. McDonough*, 547 U.S. 573, 584 (2006).

### III. DISCUSSION

#### A. Motion to Remand

Here, in the NOR, Defendant asserts this court has diversity jurisdiction. NOR ¶ 8. Plaintiff does not dispute there is diversity of citizenship between Plaintiff and Defendant. ECF No. 5. However, Plaintiff argues for remand on several grounds: (1) Plaintiff plans to add a yet unknown California defendant; (2) Plaintiff's assertion that damages will not exceed $70,000; (3) principles of fair play and state interest in applying California law to a California property; and (4) that the substantive claims arise under state and not federal law. *Id.* At the hearing on the motion, Plaintiff conceded that the Court does indeed have diversity jurisdiction to hear this matter. ECF No. 21. Notwithstanding Plaintiff's concession, the Court will still briefly address whether the amount in controversy requirement has been met, since diversity of citizenship is no longer in question.

The amount in controversy requirement has been met. The amount in controversy is determined by the complaint and encompasses all types of relief a plaintiff could receive. *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413 (9th Cir. 2018). "Where it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003). In cases involving unfair and deceptive practices related to loan and foreclosure services, courts in the Ninth Circuit have held that the amount in controversy is determined by "the value of the object of the litigation." *See Corral v. Select Portfolio*

*Servicing, Inc.*, 878 F.3d 770, 775 (9th Cir. 2017) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977)). Here, Plaintiff seeks relief of the subject property and the loan. NOR at 11-12. The plaintiff's application for a TRO states that the loss of equity in the home will be almost $700,000. ECF No 2-2, at 2. This clearly exceeds the amount in controversy requirement. Thus, both the diversity of citizenship requirement and the amount in controversy requirement are met, and this Court has jurisdiction to hear this case. *See* 28 U.S.C. 1441(b).[1]

Removal is proper under 28 U.S.C. § 1332 because complete diversity exists between the parties and the amount in controversy exceeds $75,000. Because removal was proper, the Court **DENIES** the motion to remand this case.

**B. Temporary Restraining Order**

Plaintiff raises serious issues regarding the second, third, and fourth *Winter* factors, especially regarding the hardships to the residents of her home if a TRO is not granted. ECF No. 1-3 at 9. Six people, including two elderly disabled persons and two children, live at the house upon which Defendant seeks to foreclose. *Id.* Plaintiff states that these individuals are at risk of homelessness if the TRO is not granted and foreclosure occurs. *Id.* The Court understands the seriousness of these issues for Plaintiff, and the gravity of losing a multigenerational family home. The Court acknowledges that the temporal urgency of harm from a foreclosure is often greater for people losing their homes than for financial institutions asserting value-backed interests. The Court also recognizes the public interest in preventing homelessness among the elderly, those with disabilities, and children.

The Court does not reach the issue of balancing these interests against Defendant's interests, because Plaintiff's motion does not meet the first *Winter* factor, likelihood of success of the merits. *See Shell Offshore*, 709 F.3d at 1291. Plaintiff raises four categories of legally cognizable claims: (1) that the defendant failed to follow procedural

---

[1] Since this Court has diversity jurisdiction to hear this matter, the Court does not reach the issue of whether there is also federal question jurisdiction.

requirements regarding communication under the California Homeowner's Bill of Rights ("HBOR") before foreclosure; (2) that the defendant does not have legal title to the loan upon which it is foreclosing; (3) that the defendant engaged in unfair and deceptive practices; and (4) that the defendant engaged in illegal "dual tracking" under the HBOR and the Dodd-Frank Act by initiating foreclosure proceedings while Plaintiff was seeking a loan modification. ECF No. 1-3. On the present record, Plaintiff has not met her burden of persuasion as to any of these claims.

First, Plaintiff has not shown a serious question that Defendant materially breached the communication and notice requirements of the HBOR. The relevant sections of the HBOR require mortgage servicers seeking foreclosure to: (1) contact the borrower in person or by telephone to explore options prior to foreclosure; (2) inform the borrower of foreclosure alternatives within 5 days of recording a notice of default; (3) assign the borrower a single point of contact when the borrower requests a foreclosure prevention alternative; and (4) provide written acknowledgement within 5 days of receipt of a loan modification application. Cal. Civ. Code §§ 2923.55(b)(2)(A), 2924.9, 2923.7, 2924.10. The HBOR allows a borrower to seek injunctive relief when a lender commits a material violation, meaning a violation that affects the mortgagor's obligations or the modification process. Cal. Civ. Code § 2924.12(a); *Morton v. Wells Fargo Bank, N.A.*, No. 16-cv-05833-HRL, 2016 WL 7117041, at *4 (N.D. Cal. Dec. 7, 2016). The HBOR notice and communication requirements were created to ensure that individuals facing foreclosure have notice of and opportunity to pursue alternatives to foreclosure. *Penermon v. Wells Fargo Bank, N.A.*, 47 F.Supp.3d 982, 992-93 (N.D. Cal. 2014).

The record in this case shows that Defendant met each of the aforementioned pre-foreclosure communication provisions of the HBOR. Defendant provided a declaration stating that it contacted Plaintiff to explore options prior to foreclosure pursuant to the HBOR. ECF No. 12-6 at 5. Defendant's communications to Plaintiff regarding her loan modification applications list a point of contact regarding her application. ECF No. 18-2 at 4. Defendant also sent acknowledgement emails within 5 days of receipt of loan

modification applications. ECF No. 18-2 at 2. The record also shows that the purposes of the HBOR were met in this case. Plaintiff was aware of the alternatives available to her, and had previously been informed many times that she was ineligible for further loan modifications due to her delinquent status and lack of documented change in financial circumstances. ECF No. 20 at 2-3. Thus, Plaintiff has not raised a serious likelihood that she will succeed on the merits in regards to her claims under the HBOR's notice and communication requirements.

Second, the record indicates that Defendant has the right to enforce the mortgage in question. Plaintiff generally states that Defendant relied on false or inaccurate documents to initiate foreclosure proceedings, and expresses doubt regarding Defendant's right to enforce the mortgage. ECF No. 1-3 at 9-10. However, the deed of trust shows a loan with clear terms secured by an interest in the property at issue. ECF No. 12-3. The deed of trust is signed by Plaintiff. *Id.* Plaintiff does not dispute that the loan secured by the deed of trust was in default. Plaintiff and Defendant have communicated for years about Plaintiff's default on her mortgage. ECF No. 12-1 at 3. Plaintiff fails to meet her burden of persuasion that there are any issues with the documentation and ownership of this mortgage.

Third, Plaintiff did not introduce any non-conclusory evidence that Defendant engaged in any specific unfair and deceptive practices. The UCL provides remedies for unfair and fraudulent business practices in California. Cal Bus. & Prof. Code § 17200. Plaintiff's complaint states that Defendant engaged in unfair practices, but does not allege specific unfair or fraudulent business practices other than communication and dual tracking issues related to Defendant's foreclosure on her home. ECF No. 1-3 at 7, 10. To the extent that Plaintiff does allege specific unfair or deceptive practices, those claims fall under the HBOR as discussed above.

Fourth, while Plaintiff does raise a serious question that Defendant engaged in illegal dual tracking of Plaintiff's loan, Plaintiff does not show that dual tracking was material to her inability to obtain a loan modification. The HBOR prohibits mortgage servicers from "dual tracking," which means "record[ing] a notice of default or notice of sale … while the

[borrower's] complete first lien loan modification is pending." Cal. Civ. Code § 2923.6(c). Defendant did move forward with the foreclosure by recording a notice of trustee's sale after Plaintiff had applied for the Helping Homeowners modification and before substantively responding to Plaintiff's application on August 11, 2025. ECF Nos. 12-7, 18-2 at 2, 12-8. Defendant claims that Plaintiff's application was only complete on July 15, 2025, after it recorded its notice of sale. ECF No. 12-2 ¶¶ 8, 9. However, Defendant sent Plaintiff an email on July 3, 2025, stating her application was submitted. ECF No. 18-2 at 2. When Defendant recorded a notice of sale without responding to that application, Plaintiff followed up by email about the application. ECF No. 18-2 at 25. In response, Defendant apologized, said it would review the materials, and then, on July 15, 2025, re-sent Plaintiff the same acknowledgement form it sent her on July 3, 2025. *Id.*; *id.* at 27. Defendant did not subsequently state that it required any further materials to review Plaintiff's application. On this record, it appears that Plaintiff reasonably believed that her application was complete and unreviewed when Defendant recorded a notice of sale of her home. Thus, Plaintiff raises a serious question regarding Defendant's potential dual tracking of her home.

However, even if Defendant did impermissibly dual track Plaintiff's loan, there is no indication on this record that the dual tracking was material to her inability to obtain a loan modification. Defendant stated in its communications with Plaintiff that she was ineligible for the Helping Homeowners loan modification because her loan was more than 90 days delinquent. ECF No. 12-6. Because Plaintiff was ineligible for the loan modification under its objective criteria, she cannot show that Defendant's potential violation of HBOR was material as required for injunctive relief.

Further, any violation of the HBOR has been cured by Defendant's voluntary extension of the foreclosure sale. The HBOR contains a safe harbor provision to encourage mortgage servicers to cure potential violation: "A mortgage servicer … shall not be liable for any violation that it has corrected and remedied prior to the recordation of the [foreclosure sale]." Cal. Civ. Code § 2924.12(c). Defendant has now voluntarily extended

the date of the September 22, 2025, foreclosure sale by 60 days "to give Plaintiff time to refinance the loan and/or sell the Property to pay off the loan." ECF No. 20 at 1. Given the extension, Defendant has now responded and clearly communicated regarding the foreclosure and ineligibility for modification long before moving forward with the sale. Plaintiff's claims regarding lack of notice, communication, and failure to respond to applications before proceeding with foreclosure are thus cured.

Plaintiff also alleges dual tracking violations under Regulation X, the Consumer Financial Protection Bureau rules created under the Dodd-Frank Act which prohibit mortgage servicers from continuing the foreclosure process while borrowers have outstanding loan modification applications. *See* 12 C.F.R. § 1024.41(f)-(g). Courts have found that this statute does not provide for injunctive relief against foreclosure. *Almazon v. JPMorgan Chase Bank*, 2020 U.S. Dist. LEXIS 41668, at *34 (S.D.N.Y. 2020). Additionally, Regulation X's provision against dual tracking does not apply to subsequent applications for loan modifications for which the borrower has already been found ineligible. *Covin v. FCI Lender Services Inc.*, No. 1:15-CV-0594-AT, 2015 WL 13777210 at *3 n. 1 (N.D. Ga. 2015). Thus, Regulation X does not provide Plaintiff of a likelihood of success on the merits sufficient to grant a TRO against foreclosure.

Given these facts, Plaintiff has not met her burden of persuading the Court that she has some likelihood of success on the merits, even under the Ninth Circuit's lower standard of "serious questions going to the merits." *See Winter*, 555 U.S. at 20. Accordingly, the Court **DENIES** the application for a Temporary Restraining Order.

//
//
//
//
//
//
//

## CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's motion to remand this case to state court. The Court also **DENIES** Plantiff's application for a Temporary Restraining Order.

**IT IS SO ORDERED**.

Dated: September 29, 2025

*[signature]*

Honorable James E. Simmons Jr.
United States District Judge